UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**TELECURE TECHNOLOGIES, INC.,**

   **Plaintiff,**

   v.                                                            CASE NO.

**ADNAN MALIK,**

   **Defendant.**
_____/

## COMPLAINT

COMES NOW plaintiff Telecure Technologies, Inc. ("Telecure"), and files this Complaint against defendant Adnan Malik ("Malik"), and alleges as follows:

## NATURE OF THE CASE

1.   This is an action for injunctive relief and damages in excess of $75,000 arising from Malik's breach of his signed written separation and release agreement (the "Agreement") with Telecure. [*See* Exhibit A]. In particular, following his separation from Telecure, Malik violated the Agreement by (i) failing to cooperate in the orderly transition of his duties and (ii) failing to provide Telecure the "Business Information" required by the Agreement.

## JURISDICTION, VENUE, AND PARTIES

2.   Telecure is a British Columbia corporation with its principal place of business in Vancouver, British Columbia. Telecure is a health information

technology company engaged in the business of providing telemedicine and telehealth services, and innovative solutions to improve the efficiency of health care services.

3. On information and belief, Malik is a citizen and resident of Longwood, Florida, which is in Seminole County. During the period he was employed by Telecure, Malik worked in Seminole County, Florida.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Telecure is a citizen of a foreign state and Malik is a citizen of Florida, and the amount in controversy exceeds the sum of $75,000.[1]

5. The Agreement prescribes that the parties consent to the exclusive jurisdiction of any state or federal court of competent jurisdiction located within Orange County, in the state of Florida. [*See* Exhibit A ¶10(b)]. Accordingly, venue properly rests in this federal court serving Orange County, Florida.

## GENERAL ALLEGATIONS

6. Malik founded and was the CEO of MyApps Corp., a Florida corporation. From approximately March 2016 until 2021, MyApps was owned by

---

[1] *See e.g., Langfitt v. Federal Marine Terminals, Inc.*, 647 F.3d 1116, 1119 n.7 (11th Cir. 2011) ("Diversity existed because [Plaintiff] is a Florida citizen and [Defendant] is a Canadian corporation.")

three shareholders: Malik, Muhammad Kashif Akram ("Akram"), and Dr. Muhammed Shaukat ("Shaukat").

7. In 2021, MyApps was acquired by Telecure, and, on August 6, 2021, Malik signed an employment agreement to serve as Chief Executive Officer ("CEO") of Telecure. In this role, Malik continued to control the day-to-day operations of MyApps as a wholly-owned subsidiary of Telecure. In addition, Malik maintained control over and access to all of MyApps' business information.

8. As CEO of Telecure, Malik failed to substantially perform his duties and responsibilities under his employment agreement, failed to follow the reasonable written instructions of Telecure, and breached his fiduciary duties to Telecure. Among other issues, Malik failed to act consistently with company policies and Board directives with respect to financial oversight.

9. In December 2021, Telecure conducted an investigation into financial statements and disclosures and identified potential wrongdoing by Malik. The issues uncovered included a material misstatement of revenue, as well as other financial reporting matters.

10. On December 3, 2021, Malik was interviewed as part of Telecure's investigation.

11. On December 7, 2021, Malik was suspended as CEO of Telecure pending the outcome of the investigation.

12. On December 29, 2021, Malik agreed to resign as CEO and signed the Agreement. [Exhibit A].

13. Malik was represented by counsel during the negotiation of the Agreement.

14. Malik's resignation was effective on January 7, 2022.

15. In accordance with the Agreement, Telecure paid Malik a separation payment totaling $701,000, and provided Malik with 150,000 restricted shares pursuant to a Restricted Share Agreement. Telecure provided this compensation in consideration for Malik's execution of the Agreement and his compliance with the terms of the Agreement.

16. The Agreement contains a "Cooperation; Mutual Statement/Non-Disparagement" provision. [Ex. A ¶2]. In agreeing to this provision, Malik agreed to cooperate in the orderly transition of his duties and provide all Business Information (as defined by Paragraph 2 of the Agreement) to Telecure by his separation date. The Business Information includes, among other items, all log-ins, passwords, and pins/codes for all Telecure accounts and the accounts of its subsidiaries and affiliates (including MyApps), and all financial information required for Telecure and its subsidiaries and affiliates (including MyApps) to complete the next audited financial statements.

17. Pursuant to the Agreement, Malik was required to provide the Business Information by the Separation Date, i.e., January 7, 2022, and he was to communicate only with the Chairman of the Board of Telecure.

18. The requirement that Malik provide the Business Information was material and necessary term of the Agreement, as Telecure required Malik's assistance to complete its next audit because Malik maintained and/or controlled all information related to MyApps.

19. Following his separation, Malik has failed to cooperate in the orderly transition of his duties and failed to provide Business Information as required by the Agreement.

20. Instead of providing the Business Information as required by his Agreement, Malik has obstructed Telecure's and MyApps' business operations and has failed to cooperate in an orderly transition and to provide the Business Information.

21. Among other Business Information, Telecure requested that Malik provide the log-in and password for the GoDaddy account so that Telecure could take possession of the Telecure.com domain. Malik and his counsel promised to transfer the domain on the Separation Date in multiple written correspondence on which Telecure relied in making the Separation Payment. However, Malik failed to do so as he and his lawyer promised. Instead, hours after the time Malik had

committed to transfer the domain, Malik claimed that Akram, another former shareholder of MyApps and the then-CTO of Telecure, had somehow logged into Malik's account and transferred the domain to himself.

22. Malik has never provided the log-in and password for the GoDaddy account as he was required to do under the Agreement

23. Akram, in turn, refused to provide the domain to Telecure and absconded with Telecure's technology. On information and belief, Malik was is working with Akram and Shaukat to continue to obstruct Telecure's business operations and withhold the Business Information that Malik was required to provide, all in violation of the Agreement which prohibited Malik from having any business-related communication with Telecure's and MyApps' directors.

24. Malik also withheld necessary Business Information regarding a PNC Bank Account held in the name of MyApps, which contained over $400,000. Malik was required to provide the log-in and password for the account and relinquish the account, as well as all account information, under the Agreement. However, Malik failed to provide the log in for the account or relinquish the account to Telecure as required by the Agreement.

25. Telecure subsequently learned through public filings by Dr. Shaukat, purportedly on behalf of MyApps, that Malik has maintained access to the bank account after his separation in violation of the Agreement.

26. The PNC Bank Account funds, which include funds raised by Telecure from investors of Telecure, are the property of Telecure and have been improperly seized and held in violation of the Agreement.

27. The cooperation provisions in the Agreement were and are reasonably necessary to protect Telecure, and to allow the company to comply with its fiscal and legal obligations, including its next audit, which must be completed and filed with applicable regulatory authorities by April 30, 2022.

28. If Telecure fails to complete its required audit by April 30, 2022, the British Columbia Securities Commission may impose a "cease trade order," whereby Telecure's shares will be ceased from trading on the Canadian Securities Exchange.

29. Telecure seeks immediate injunctive relief to secure Malik's compliance with the Cooperation; Mutual Statement/Non-Disparagement provision of the Agreement, including his cooperation as agreed under the Agreement for the return of Telecure's Business Information. Among other things, Telecure needs access to the PNC Bank Account and source files and data supporting MyApp's business transactions to allow Telecure to complete its required financial audit.

30. Telecure has no adequate remedy at law for its injuries as a result of Malik's violations of the Agreement. Telecure's full damages are not fully

ascertainable at the present, nor can they be readily calculated with reasonable certainty in the future, but they will be substantial.

31. The injury which will befall Telecure if the Malik is not enjoined as requested herein outweighs any harm that the issuance of an injunction may inflict upon Malik.

32. The issuance of an injunction as requested herein by Telecure will in all respects serve the public good in that it will promote adherence to contractual obligations that were voluntarily undertaken and will prevent further harm to Telecure.

33. All conditions precedent to the relief requested herein have been met, have occurred, or have been waived.

34. As a result of the unlawful acts of defendants, Telecure has retained the undersigned counsel and is obligated to pay them a reasonable attorneys' fee.

## COUNT I
## BREACH OF CONTRACT

**(Separation and Release Agreement)**

35. The allegations set forth in Paragraph Nos. 1 through 41 above are realleged and incorporated herein by reference.

36. The Agreement between Malik and Telecure is valid and enforceable.

37. Malik has breached the express terms of the Agreement by failing to provide Business Information as described herein, including without limitation

8

the information necessary to complete the audit (including bank statements and source data), the information related to the GoDaddy account and Telecure domain, and the information related to the PNC bank account.

38. Malik's acts have caused, and will continue to cause, irreparable injury to Telecure.

**WHEREFORE**, Telecure demands judgment against Malik as follows:

(a) Temporarily and permanently enjoining Malik from using and holding Telecure's Business Information;

(b) Ordering Malik to cooperate and provide Telecure with necessary Business Information and support to complete its required audi;

(c) Awarding Telecure its attorneys' fees and costs and interest; and

(d) Granting such other relief as the Court deems just and proper.

Dated this 9th day of March, 2022.

Respectfully submitted,

/s/ Catherine H. Molloy
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
Raymond D. Jackson
Florida Bar No. 1028350
Email: jacksonra@gtlaw.com

**GREENBERG TRAURIG, P.A.**

                                              101 E. Kennedy Boulevard
                                              Suite 1900
                                              Tampa, Florida  33602
                                              Telephone: (813) 318-5700
                                              Facsimile:  (813) 318-5900
                                              *Attorneys for Plaintiff*
                                              *Telecure Technologies, Inc.*