# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**TELECURE TECHNOLOGIES, INC.,**

      **Plaintiff,**

v.                                    **Case No: 6:22-cv-506-PGB-LHP**

**ADNAN MALIK,**

      **Defendant.**

_____/

## **ORDER**

This cause is before the Court on Plaintiff Telecure Technologies, Inc.'s Motion for Preliminary Injunction (Doc. 2 (the "**Motion**")), filed simultaneously with the one-count Complaint for breach of contract (Doc. 1) on March 9, 2022. On March 10, 2022, the Court directed Defendant Adnan Malik to respond in opposition to the Motion within 21 days of service of process and gave Plaintiff leave to reply within seven days of service of Defendant's response. (Doc. 6). Defendant timely responded in opposition to the Motion on April 5, 2022 (Doc. 12), and Plaintiff timely replied on April 12, 2022 (Doc. 13). Accordingly, the matter is ripe for review.

To obtain a preliminary injunction, Plaintiff, as the movant, must establish: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable injury in the absence of the proposed preliminary injunction; (3) the threatened injury to the movant exceeds the damage that the preliminary

injunction may cause the opposing party; and (4) the preliminary injunction would not disserve the public interest. *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020). Ultimately, "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

Upon review of the parties' respective briefs and the exhibits attached thereto, the Court finds that a hearing is unnecessary for the resolution of this Motion—in fact, Plaintiff did not request a hearing—and the Motion is due to be denied for Plaintiff's failure to establish irreparable injury, "the *sine qua non* of [preliminary] injunctive relief." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotations omitted); *Siegel*, 234 F.3d at 1176 ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.").

Here, the Motion, with the attached declaration of Eli Dusenbury, Plaintiff's Chief Financial Officer, states that Plaintiff entered into a separation and release agreement (the "**Agreement**") on December 29, 2021, with Defendant, Plaintiff's Chief Executive Officer and the former Chief Executive Officer and founder of MyApps Corp., a company acquired by Plaintiff earlier that year. (Doc. 2, pp. 1–5;

Doc. 2-2, ¶¶ 1–5; *see* Doc. 1, ¶¶ 6–7). Section 1 of the Agreement obliges Plaintiff to pay Defendant a total of $701,000 and to provide him with 150,000 restricted shares[1] and, in turn, Section 2(a) of the Agreement obliges Defendant to "cooperate in an orderly transition of his duties, including providing all business-related information" to Plaintiff by his separation date of January 7, 2022. (Doc. 2-1, pp. 2–3; *see* Doc. 1, ¶ 15).

Plaintiff asserts that Defendant withheld some of this business-related information, and it requests a preliminary injunction compelling Defendant to provide all business-related information as defined in the Agreement, "including but not limited to, necessary business log-ins and passwords for GoDaddy and the PNC bank account, and all information necessary for [Plaintiff] to complete its next audit." (Doc. 2, p. 11). Plaintiff contends that this business-related information is vital to the completion of its next audit by April 30, 2022, and that its failure to timely complete the audit "may" result in the imposition of a "cease trade order" by the British Columbia Securities Commission, which would suspend Plaintiff's shares from the Canadian Securities Exchange and thereby cause irreparable injury to Plaintiff. (Doc. 2, pp. 5, 8; Doc. 2-2, ¶ 14).

---

[1] Given that the object of this litigation is the Agreement, which valued Defendant's full performance of his obligations at $701,000 and 150,000 restricted shares, Defendant's argument that the Complaint fails to satisfy the amount in controversy requirement for the invocation of the Court's diversity jurisdiction is meritless. (Doc. 12, pp. 2–4); *see Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) ("When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. Generally, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (internal quotations and citations omitted)).

There are two problems with the Motion's irreparable injury argument. First, Plaintiff's qualifying language effectively concedes that the "cease trade order" is not a certainty, and Plaintiff fails to provide any evidence showing that this penalty is imminent. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Siegel*, 234 F.3d at 1176 ("As we have emphasized on many occasions, the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." (internal quotations omitted)).

Second, the Motion never specifies *what* business-related information is necessary for the completion of the April 30, 2022, audit. Mr. Dusenbury's affidavit mostly speaks in general terms:

> Additionally, Telecure needs immediate access to its log-ins, passwords, and pins/codes for all of its accounts, as well as source data for all of the MyApps transactions required to complete its next financial audit. . . . To complete the audit, Telecure needs Business Information and all source data that Malik is withholding. Among other things, Telecure needs Malik to provide source files and data supporting every MyApp's business transactions. Currently, Telecure only has source documentation in the form of bank statements and Quickbooks, and this information is not nearly sufficient to complete an audit. Telecure also needs Malik to cooperate with the auditor to provide an understanding of the expenses incurred and authorized on behalf of the company by Malik.

(Doc. 2-2, ¶¶ 9, 11–12; *see* Docs. 2, 13). In light of such inexactitude, the Court cannot issue the requested preliminary injunction, which broadly demands "all information necessary for [Plaintiff] to complete its next audit. (Doc. 2, p. 11).

Plaintiff only discusses, in any detail, a GoDaddy account containing a Telecure.com domain and a PNC bank account, in the name of MyApps Corp., containing $400,000 of assets raised by Plaintiff through investors. (Doc. 2, pp. 3–4; Doc. 2-2, ¶¶ 7–8). But, notably, Plaintiff's discussion of these accounts still feels incomplete. As to the GoDaddy account, Mr. Dusenbury's affidavit states that Defendant logged on to the GoDaddy account to transfer the Telecure.com domain to Plaintiff on January 7, 2022, but he discovered that Kashif Akram, Plaintiff's Chief Technology Officer at the time, had accessed the account, transferred the domain to himself, and absconded with Plaintiff's technology. (Doc. 2, pp. 3, 7–8; Doc. 2-2, ¶ 7; Doc. 13, pp. 2–5). Although Mr. Dusenbury's affidavit asserts that Plaintiff "still needs access to the domain," it is unclear why Plaintiff still needs access to the GoDaddy account, which no longer contains that domain. (Doc. 2-2, ¶ 7).

As to the PNC bank account, Mr. Dusenbury's affidavit merely posits that it "belong[s] to [Plaintiff] and [has] been improperly seized." (*Id.* ¶ 8). Yet in Defendant's affidavit, he states:

> Based on my information and belief, Mr. Dusenbury wrote to PNC Bank, after my suspension on December 7, 2021, in order to seize and suspend the bank account, and the funds in the bank account got frozen. I am aware that the directors of MyApps wrote to the bank and requested to re-open the bank account as the closed account was hurting the business of the

> company. They have also filed a lawsuit against Telecure, and due to the lawsuit the PNC Bank account is "in dispute" as there is a pending litigation from both sides in Florida. I have nothing to do with this bank account. Since my separation from the company, I have had no control and say in this matter.

(Doc. 12-1, ¶ 38). In reply, Plaintiff states:

> [I]n his self-serving affidavit, Malik states that other directors of MyApps wrote to the bank and requested to unfreeze the account and "I have nothing to do with this bank account." However, in a sworn affidavit filed by Malik in the Supreme Court of British Colombia, Case No. S-221610, Malik says the exact opposite, stating "as such, when the MyApps Account was frozen, I had to drop everything to try and reinstate out account [. . . ] The MyApps account was unfrozen only after Dr. Shaukat and I, as directors of MyApps, through legal counsel wrote to the bank[. . . .]" Telecure was not in possession of this affidavit at the time it filed it[s] Motion for Preliminary Injunction and, in light of the Court's Order prohibiting Telecure from submitting rebuttal affidavits, Telecure is unable to attach it here and seeks to supplement its submission to include this affidavit.

(Doc. 13, pp. 4–5). The Court does not require Plaintiff to provide this supplementary affidavit because it is still not clear what is going on with this PNC bank account and why Plaintiff requires access to the account for the purpose of completing the upcoming audit. The Court is wary of issuing a preliminary injunction in this situation and thereby interfering with the pending litigation regarding this bank account.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction (Doc. 2) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on April 14, 2022.

6

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties